Good morning, Illinois Appellate Court, 1st District Court is now in session, the 3rd Division. The Honorable Justice Nathaniel House presiding, case number 1-8-1-8-4-0, 4220 Kildare v. Regent Insurance Company. Good morning, this case is being conducted via Zoom because of the COVID crisis. My name is Nathaniel House, I'm presiding over this case with me. Our Justice is Margaret McBride and Justice Eileen Burke. With the parties who are going to present today, please state their names and the party they represent. Good morning, Your Honor, Ron Sterney on behalf of the Plaintiff Appellate, 4220 Kildare LLC. Good morning, Your Honors, Robert Ostojik on behalf of the Appellee Regent Insurance Company. Thank you. Because we're doing this via Zoom, we modified our rules for hearings. How we're going to proceed today is that each side will get, in turn, 10 minutes of uninterrupted presentation, up to 10 minutes, and after the presentation, the justices will ask questions. After the judges' questions, the appellant will be allowed to have a short rebuttal. Does anyone have any questions about how we're going to proceed? No, Your Honor. Okay. With that, we can begin with Mr. Sterney. You may start when you're ready. Good morning, Your Honors. May it please the Court, again, my name is Ron Sterney, I represent the Appellant, 4220 Kildare LLC. Kildare seeks the restoration of its jury verdict, which was taken away by judgment and notwithstanding the verdict. The verdict was the amount of $544,366. Would the Court care for a statement of facts? Not for me. All right. The central issue here that the trial judge focused on is the Earth Movement exclusion. There were a few other exclusions that were argued and submitted to the jury, but the And I think it's important to start off with the inception that this exclusion and the argument surrounding it did not arise for the first time at the jury trial. There was a motion for summary judgment, which was denied. There was a motion for reconsideration, which was denied. And then subsequently, at the close of the plaintiff's case in chief, the motion for a directed verdict was denied. Because the standard overview is substantially similar to a motion for summary judgment in some regards, it raises the question as to why the other motions were denied when the facts remain the same. And the facts essentially have remained the same prior to trial and after trial. The standard overview, which I'm sure the Court is aware of, overwhelmingly favors the insured. First, because it was a verdict which was removed under a motion for JNOB. And under that standard, any evidence which would support the verdict would warrant a reinstatement of the verdict. Second, the rules of contract interpretation, as applied specifically to insurance policies, also favor the insurers. So there are two independent reasons that the burden for the insurance company is extraordinarily high in this case. Deerick movement exclusion that the trial court relied upon, I don't believe, applies in this case. First, in essence, the sequence of events that occurred indicate that there were two separate events. The first event was when the insulation in between two slabs was compromised by the occurrence and the loss of the freezer door being left open for the weekend. When that happened, we had damage. And that testimony and that evidence was uncontradicted. That damage would have required the demolition of the floor slab to replace the insulation. Several months later, you had the heat which occurred and really didn't have anything to do with the damage that initially the structure suffered. So in that sense, and no one, it wasn't addressed by the trial court, and it really wasn't addressed by the insurance company either, why they would not pay for this loss. Put another way, if the heat had not happened, Regent would have had to pay this loss. The earth movement exclusion is being bootstrapped into this to exclude the significant and real loss in this case. At the jury trial, we elicited testimony and evidence apportioning the damages, and the damages showed that only a small sliver of the damages applied to dealing with the heat that occurred. And that was $14,400. I think that this case probably should be handled in the same manner in the case that is cited by the, I believe, Arkansas Valley Drilling versus Continental Western Insurance Company. There you had a malfunction, a pipe break and water damage, which the insurance company covered. Subsequently, the water caused a heave, and then that was excluded. That's really what should happen here, and the jury verdict should be reinstated because the jury was allowed to take into account the varying damages, and in fact, returned on a war that was less than the full amount requested. So we should be able to infer that the jury already took that into account. Second, the application of the earth movement exclusion here was erroneous by the trial court. To begin with, what occurred is not an enumerated condition. Much of the authority relied upon that shows that the difference between natural occurrences and man-made occurrences rests on the term improper soil compaction. That is a specifically enumerated man-made cause, and it is, I think, uncontroversial that such a cause would be excluded because it's specifically enumerated in the policy. The case law that the appellant relies on, Mattis and the other cases from other states that our appellate court relied on, specifically invokes the Doctrine Reus Sem Generis, and all of the other categories of damages that are enumerated in the earth movement exclusion are natural in nature. Specific language of the earth movement exclusion relies on the term soil conditions, the conditions of the soil that are naturally present conditions of the soil. The naturally present conditions of the soil, in this case, would not have produced the loss that occurred, the heat, the second occasion. And the reason for that is neither the naturally present moisture in the soil, nor the soil itself, would have heat. And the question or the test, again, is if there's any evidence to support our position, the insured would prevail. Here, we went way above and beyond that. And we proved, I would suggest to the court, beyond a reasonable doubt, that it is impossible that this was a naturally occurring event. First, experts testified in court that this was not natural in nature. Both Mr. Steve Sanders and Professor Robert Finnow both said this was not naturally present moisture. The plaintiff's expert, Mr. Sanders, in ESI, conducted scientific tests to show the way that water was introduced into the soil, and it was not naturally present. Second, and more common sense, is the way that the building was structured. I don't think you will have very many cases that come before the court where you have two identical subject properties, all carrying the same characteristics, where you can compare the occurrence in one with the existence of the other. In this case, freezer K, which is a subject freezer that had the heave event, is in sequence with two other freezers. It's a sandwich in the middle, J, K, and M. Freezer M is identical. Our expert conducted testing, scientific testing. He cored the slab. They went and they looked at the insulation that was present in both. They did all the analysis to show that they were identical, and this was uncontradicted. The insurance company did not contradict this, and they didn't have any testimony to contradict that. When you have two identical pieces of property, two identical subjects, and one suffers a catastrophic loss and the other doesn't, one cannot say, plausibly argue, or satisfy the Because if it was naturally present moisture, and freezer K is upwind of freezer M, freezer M should have suffered the same loss, and that was testified to by the experts and not contradicted. And it follows logically, and that is probably why the jury rejected the Eritrean exclusion, specifically in response to a special interrogatory. The language, in this case, should be construed against region. Again, the soil conditions refers to the naturally present conditions in the soil, and they do not have a specifically enumerated man-made provision in their policy that would exclude the circumstances that happened here, where you have a freezer warehouse that produced the cold, which made the ice, and produced the water that made the ice. Similarly, the language of the policy really refers to the conditions of the soil and references movement of the soil. However, the experts in this case testified that it was a significant amount of ice that formed under these pillars as a result of all the water, and that heaved them. In fact, they specifically said that there would be the same amount of ice would be required to lift these pillars. The amount that this floor raised, 16 inches in the matter of a few months, was not natural, and in fact, at least one expert, Mr. Sanders, testified he had not seen that before, ever. Okay, you can wrap it up. Okay, the other conditions that are raised were not strongly advanced in the trial court, but also are inapplicable. I think the nearest one is the water exclusion, which their own vice president testified was a stretch. I think that on the briefs that the language of the nature of the water, that it did not flow in from the ground and up into the foundation. It rather came down warrants that supports the notion that this was a covered loss because of the compromising of the insulation. And for that reason, Kildare is asking this court to reinstate the jury verdict and award the prejudgment interest that we asked for. Reserve the balance of my time for rebuttal. Thank you, your honors. Thank you. Justice McBride, do you have any questions? Yes. Mr. Sterni, the opposing counsel says that you're basically creating two losses for the first time and that you never really argued that these were separate losses. How do you respond? I'm not sure that there is a requirement for the insurer to differentiate and analyze those losses. We had an event. We had damage and we produced it to the insurance company and they were the ones that decided the manner in which they were going to dispose of it and treat it. The pleadings put them on notice as to what was wrong. In other words, this is the damage we suffered and they went to trial on that. The motion for summary judgment that the court disposed of was the defendant's motion for summary judgment to which we were responding. The there was nothing claimed by my opponent. No motions in the mini file and no attempt to object to the advancement of that theory before the jury. Alternatively, I suppose that we could file a motion for to amend the pleadings to conform the pleadings to the proof and that would cure the defect. I don't believe that what the insurance company is advancing would turn claims on its head. In other words, it would put the burden on the insured to do a policy analysis and determine what happened. All right. I have another question then. Do we even really need to get to the issue of whether the Earth Movement exclusion is ambiguous? Maybe not, Judge, because you could find that the conditions that occurred here do not fall within the specific language of the clause. Didn't the jury actually reject the exclusions because they were instructed on it? They were instructed on the yeah, they were instructed in the jury instructions as to the application of these exclusions, and they decided that they didn't apply. And they they reduced the amount of damages you actually sought. So in some way, they obviously came to some conclusion about that whatever you were seeking, it was less than what they thought would cover your loss. That would be my supposition, Your Honor. And I would point out that we did submit special interrogatories for consideration to tease out this issue of the man made versus unnatural made. The defendant objected to these special interrogatories, and they were not tender to the jury. So we are only left with the verdict to rely on. But yes, I broke out the damages for the. I have no other questions. Thank you, Justice McBride. Justice Burke, you have any questions? Oh, Judge Burke needs to unmute. I'm sorry, Justice Burke. Yes, I can't hear that enough. Okay, Mr Sterni, the jury specifically rejected the amount that the heaters were. Wasn't it a specific deduction that they made that the heaters that were used were not included in the damages? It would appear so, Your Honor. And it was directly correlated to that, correct? You know, Your Honor, I believe I looked at that at one point in time. I do believe that's the case. Okay, that was my only question. Thank you, Mr Sterni. Thank you, Your Honor. Thank you. Now, did you argue in the trial court that this insulation was already ruined by the fact the door was left open and all the condensation that this insulation had to be removed in regards to any earth movement? That's correct, Judge. All right, I have no further questions. Okay, no one has anything else? Mr Stojic? Yes, Your Honor. Thank you. May it please the court. The trial court's decision to grant Regent Insurance Company a directed verdict and judgment was correct, and that decision should be affirmed. In its written order, the trial court, in very compelling fashion, explained the reasoning for its decision. First, there is no dispute of the material facts. All the experts in this case testify that the damage to the concrete slab occurred because soil underground at the footings froze, expanded into the footings, and uplifted the floor of this 30,000 square foot warehouse. Since there was no dispute in the fact, the court correctly said this really is a question of law. It's for the court to then go ahead and interpret the policy, the contract of insurance here, and apply it, which the court did. Let's talk, first of all, about that absolutely no dispute in the fact. And I will rely only on the plaintiff's experts. Plaintiff had two experts, one who examined the warehouse in 2009 and wrote a written report in 2009. The second expert was retained eight years later and wrote a report in 2017. In 2009, the expert stated in his report, the purpose of my visit was to examine the condition of the existing warehouse floor slab in Building K. And he concluded, the floor slab has heaved a considerable amount affecting its serviceability. It is evident that this is due to the frost heaving of the saturated subsurface. Due to the amount of movement and elevation differentials, repairing the slab does not appear practical and replacement is recommended. Eight years later, plaintiff's expert wrote a 20-page report. His very first conclusion was, number one, the uplifting of the floor in Freezer K was due to the heaving of the soil beneath the footings under Freezer K. At trial, both experts testified to that extent, that it was underground, moisture in the soil, expanded, froze, uplifted, causing this damage. At trial, Schmidt testified. I asked him, the conclusion you reached in this case was that the cause of this upheaval of the concrete was due to the freezing and expansion of the soil down at the footings, right? His answer, right. There was frost heave, correct. That's correct. I asked him, frost heave down below where the footings are about, right? He said, yes. Below the footings, that is correct. Question, the upheaval which was caused by the freezing and expansion of the soil six feet below ground at the footings, true? That is correct. Mr. Sanders, plaintiff's other expert, at trial, I asked him question. And Mr. Schmidt determined that the soil at the footings froze, expanded, pushed up the footings and caused the concrete to upheave, right? Answer, that's correct. Yes. Question, and that's your opinion as well, isn't it? I have no reason to disagree with that opinion. So yes, question, it's your opinion, right? Answer, yes. So after hearing all the trial testimony for a week, Judge Mulroy wrote in his written order, all the expert witnesses who testified agreed that Kildare's loss was caused by the freezing and expanding of moisture in the soil under the freezer. And I quote, it is factually undisputed that Kildare's loss was caused by the freezing and expanding of moisture in the underground soil, which exerted pressure and caused freezers cave concrete floor to heat. So we look at the policy of insurance, in particular, the Earth Movement Exclusion. The trial court relied on two federal cases, the only two cases applying Illinois law. In both those cases, one from 2007, one from 2018, the courts found that this provision was clear and unambiguous, that it applied to natural occurring moisture and maybe man-made or non-natural occurring moisture. The court also relied upon other jurisdictions that analyze the identical Earth Movement Exclusion in our case. It's very telling that plaintiff has not and cannot say to a single case where any court in the U.S. has actually analyzed our exclusion in this case and found it to be ambiguous and somehow confusing, because it doesn't exist. Plaintiff relied upon Omafis case and Gullet case. Both those cases interpreted policy language completely different from our case. So obviously, when we have a different language, you have to interpret that language and not try to interpret a contract that doesn't exist in that case. Moreover, the two federal cases, Sports Arena and Temperature Service and Acuity, analyze the exact arguments plaintiff is making here, that the exclusion is ambiguous. They rejected that. And they also rejected the argument that plaintiff is making here, that somehow this exclusion does not apply to man-made moisture, that it only applies to, for instance, earthquakes, landslides, or events such as that. Both those cases specifically rejected those very same arguments. We also cited at least six different cases in other jurisdictions that have analyzed this identical earth movement provision. And all of the cases found it to be clear, unambiguous, and applicable. Now, plaintiff had a broker. They could have rejected or not accept our policy. It doesn't matter what comes about. Essentially, the laws of nature state freezing occurs when you have moisture, freezing temperature, and some time. Clearly, it doesn't matter what happened. If we have freezing and expansion at the footings that causes the foundation to uplift, we said we won't cover it. But just to make it clear, we included in this provision, anti-concurrent causation language. That language was upheld by the second district in the Bolza case, which we cited, which plaintiff can't distinguish because it's the identical language. That language states, we will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. That language has to be applied. That's in the contract. The Bolza court found it to be unambiguous and applied it. And Judge Molroy correctly applied it as well. So we have at least two court cases, federal court case applying it on our law, directly on point in our favor, a second district case with respect to the anti-concurrent causation language, and at least six cases in other jurisdictions. Plaintiff hasn't come up with one single case to support its argument of ambiguity. And Judge Molroy gave plaintiff maybe a half hour to try to come up with the argument or to say that it shouldn't apply in this case. But actually the facts, plaintiff's own experts belie plaintiff's argument. In there, in the trial testimony, plaintiff asked his own expert about the moisture. And he asked them, is it your opinion that the water that froze under these footings and caused them to heave was not naturally present in the soil? His own expert said, no. I mean, you're going to have some moisture present in the soil, of course. Civil engineers and soil engineers would probably be more well-versed in it, but you're going to have moisture in the soil. Ultimately, he said, but really that the moisture that caused the uplift, but really it's from the soil and the ventilation air is your primary source of the moisture. Now, I do want to address now, because it is true. After we, after, apparently after plaintiff found out that the Earth Movement exclusion and its own experts support judgment for region, plaintiff came up with this, the insulation is wet. Guess what? We're really not trying to fix this 30,000 square foot warehouse concrete that have uplifted, but it's the wet insulation. I believe that's in very bad form, that argument. It's not supported by the record. Judge Mulroy doesn't even mention it because it's coming about after the fact. And quite frankly, tried to get that in. But let's look at the argument and the facts. First of all, it's a tacit acknowledgement that the Earth Movement exclusion applies, which is why now plaintiff is looking for some other way to obtain coverage or recovery. For 10 years, plaintiff has never mentioned insulation. If you go to plaintiff's initial complaint, they mentioned damage to the floor. In the complaint, plaintiff attaches the sworn statement signed by plaintiff that says, the property involved in the claim, freezer floor. No mention of insulation. In 2016, plaintiff refiled this case because it was not suited when it was on leave of trial. Again, thank you. Again, if you look at the record, and I think I cited in our brief, time and time again, there's no mention of this wet insulation. In fact, plaintiff's own brief states that the wet insulation was unobservable. They never mentioned it. Plaintiff's own expert states when I asked them, so I take it the concrete slab, okay, I take it if the concrete slab on top isn't damaged, you're not going to recommend they replace it. That is correct. Question. You recommended to Kildare that they needed to replace the slab because you saw the slab was damaged because of this upheaval. Answer. That's correct. Record 2294, page 33 of the trial testimony. Ultimately, there was absolutely no dispute, and we're relying on just plaintiff's experts as to what happened here. And there's no dispute. The policy is clear, unambiguous. Judge Mulroy was absolutely correct, and he cited those cases. But really what happened here is why did we have this? It was faulty maintenance. They're supposed to provide heat under these two slabs. In July and August, that entire crawl space was frozen with icicles. When they provided heat, the floor dropped. And their own experts said providing heat, just like in sports arena with an ice rink, if you have ice- Can you wrap up? We have another case after this one. I will, Your Honor. Ultimately, I think they're not entitled pre-judgment interest. They never even cited anything in their initial motion. And besides, Regent is entitled to judgment. So therefore, they wouldn't be entitled to that. We ask that you affirm the trial court's decision. Thank you. I apologize. Not to be rude. There's another case after this one. Justice McBride, do you have any questions? I do. Everything you said depends on there being one loss. Isn't that correct? No, Your Honor. Okay. You're saying that there was no evidence by any expert that the insulation was compromised after the refrigeration door was kept open for three days. Are you suggesting that? No, it could have been compromised. But that in and of itself, Your Honor, was not the loss that we had. Okay. At the jury trial, counsel argued the following. And you tell me if I'm wrong. I'm reading from the record. This is counsel for Kildare. Arguably, there are two losses. You heard that in September, there was damage to the insulation that compromised that insulation. It wasn't seen at that time because it was covered by the floor slab. The second loss is the uplift of the floor several months later. When that water through condensation from the outside came and accumulated under the structural slab and rained down on the soil, got in there, and then the columns acted as a conduit and froze it, and then ice pushed up a second time. And that was the heave. You should analyze these separately. That's what the lawyer argued to the jury. Now, do you debate that that was what was argued to this jury? No, counsel did try at the very end. Your argument was that the insulation was the problem here. And yet the freezer next door never experienced any upheaval because of this faulty insulation. It's not necessarily correct. We didn't argue anything about the insulation. We accept what they said, that the upheaval. Judge, the fact that you had the expansion of the soil, that's it, Judge. The earth movement exclusion applies regardless of if the moisture was because of rain, the moisture came from some sort of underground moisture in the soil itself, or it came from above. You're not answering my question. There was expert testimony in this case. The plaintiff's experts testified that the damage to the insulation was caused by the freezer door being opened. And that was the major cost, which this jury awarded after they heard all the evidence for the damage to the insulation. So if there's two losses, and you're arguing there's really, it's all the upheaval. That's not what the jury considered. They considered two separate losses. Under that second district case and other cases, the anti-concurrent clause would not apply because the jury, if there's some evidence that there were two losses, and the first one was not caused by the water going underground, every witness, there isn't a single witness that suggested the insulation damage was caused by the freezing soil underneath that pushed the columns up and then heaved the floor. Judge, I spent a lot of time on our brief, actually citing to the plaintiff's experts testimony, where the experts stated, we do not know where the moisture came from. We never quantified it. Their own experts said, Judge, it could have been there as far back as the year 2000. So let's assume plaintiff- But why didn't it, why didn't that impact the other freezer? Everybody agreed, no insulation problem, no moisture problem with the other freezer, immediately adjacent to it, and yet you're arguing that this insulation problem was the result of faulty maintenance. Judge, I'm not arguing about the insulation, but the fact is our experts never went into this other freezer. I can tell you this, plaintiff's case is not about what actually happened, what their experts said, what plaintiff is trying to do is say, well, you explain, Regent, why other parts didn't uplift or did, knowing that our experts didn't go into that other freezer, because when they called us for a loss, they said our floor uplifted. Here's the claim we're submitting. Judge, again, I asked, plaintiff asked, his own experts, was the moisture here from this event? And they said, we can't tell you, we can't even tell you when it got wet, if it was 10 years before we actually had a policy on this. So if plaintiff theoretically actually came to us and said, my claim is only about wet insulation, then I think there would be other provisions such as, okay, since your own experts are saying it could have occurred 10 years before our policy was written, there would be no coverage. The point is, Judge, I think there's a reason why the trial judge who sat in this case and had this case for a week never mentioned this theory of insulation, because plaintiff counsel in argument brought it up for the first time at trial on a redirect with a witness. Judge, it is a complete red herring. Their sworn statement says the floor. Both complaints say the floor. The experts' reports never mentioned wet insulation as a loss or second loss, until counsel argued it to the jury, because counsel realized he had a big problem that his experts supported. The Earth Movement exclusion. And that's why Judge Mulroy doesn't even reference it, doesn't even mention it. And that's why it isn't an issue here. It's simply a red herring, Judge. And I cited countless matter within the record where plaintiff's own experts disavow that they came to investigate any wet insulation. They complete, and even their second expert who looked at it in 2017 said, the moisture was really natural occurring moisture in soil. So Judge, it completely is a ploy. But I think if you look at the Judge Mulroy's written ruling. I think we have to look at the evidence presented and the experts, that's all. We don't really look at what Judge Mulroy did. We have to look at whether the jury considered this, not the judge. It isn't that. Anyway, I don't have any other questions. It is interesting because the standard here, what we're here as it was a directed verdict. And honestly, Judge Mulroy reserved his ruling and it was actually issued after the jury's verdict. But in fact, it's a directed verdict. And that's what, and we need to review that. And based on plaintiff's own experts and the clear language in the policy, Judge Mulroy was correct in granting directed verdict. Thank you. Justice Burke, do you have any questions? No, I have no questions. Thank you. Just one question. Counsel for the plaintiff states that there was a motion for summary judgment and the same issues were presented. The facts presented at the trial were the same at the time as they were at the time the summary judgment motion was presented. So what is the logic? What is the reason that the trial judge this time after the jury verdict decided to change his mind? What is the logic there? Because he actually heard the expert testimony. And I think Judge, and we cited to the record of the argument on the motion for directed verdict where that Judge Mulroy asked us, where are these two federal court cases? We actually cited them in the summary judgment motion, but for whatever reason, it was overlooked. And obviously that was his prerogative. But I think after he actually sat down and listened to the testimonial, in particular plaintiff's experts, as well as defendants expert, it was crystal clear that you had freezing underground, which expanded, lifted the footings and causes 30,000 concrete slab warehouse to uplift. All right, that's all I have. Does anyone else have any questions? Justice McRogers for? No, nothing further. All right, very well. Mr. Sterny, you can wrap up quickly with your rebuttal. You've your own mute. Hey Mayor, I think there was some misstatements as to the evidence that was presented. I think there was adequate evidence showing. In fact, ESI's report went through great amount of scientific testing to show where the moisture came from. And there was testimony from Mr. Sanders. He specifically said he did not believe this was naturally present. So the state that there was no evidence, I think is belied by the facts. The notion that they weren't put on notice about this to occurrence theory, I don't think is supported by the way we plead complaints in this case. In this case, the complaint says, you didn't pay us our money. We have these damages, pay us. That's essentially the sum and substance of the complaint. The case law requires the insurance company, which is raising the defenses. It's their burden to put those defenses up. The insured can respond. And that's really what we were doing here, responding to all their various theories. First, it was a mechanical issue that the ventilators weren't working. And then it was the issue of the naturally present soil. Professor Fino also said the same thing. He said, I can't account for all this heat with naturally present soil, especially compared with freezer M. So I don't think the facts that they've asserted are correct. And I think that what they're trying to assert here is to abrogate existing insurance law that puts the burden on them and then put it on the insured in this case. Finally, they committed forfeiture by not making a motion or taking some action or even objecting during opening statements and closing statements to this theory. By failing to preserve their record, they cannot now argue that this is somehow a bar to recovery. In essence, they induced error here. And Judge Morrow, I never took any action to prevent this. And how is this case then different than any other series of cases from criminal to civil, where an argument is made based on the facts or as they come out at trial? That's not uncommon. What they're advocating here would certainly be difficult to apply in all the cases that we try in these courts in Illinois. I believe it should be rejected. Finally, there was one reference, of course, to Mr. Schmidt's testimony that the slab was, that it didn't need to be, it had to be replaced specifically because of the upheaval. In the record, and I mentioned in my brief, I believe that when I went back on redirect, he admitted again that the slab had to be destroyed to fix the insulation. So counsel is exerting great editing to get to his points. Regent, finally, counsel said that, here's our policy, take it or leave it, Kildare. Regent assumed the risk. They knew what they were getting into. The testimony was they inspected the property once a year, they inspected it before. There was an insurance coverage questionnaire. They knew the nature of this freezer. They assumed the risk. They took the policy premium. That argument is fallacious. And lastly, on this notion of who has the burden of analyzing this claim, Mr. Gronst, the defendant's own witness, the vice president testified it's their obligation to do it. I would ask the court to reject it. I ask the court to reinstate the jury verdict and use its authority to award the prejudgment interest and enter judgment again in favor of Kildare. Thank you, your honors. Thank you. Thank you both. The case was well-argued and well-briefed. We will take it under advisement and a decision will be issued in due course. Thank you again. Have a great afternoon.